# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,**<br><br>*Defendants.*<br><br>**DJD LAND PARTNERS, LLC, and LDG001, LC,**<br><br>*Relief Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § | **No. 3:22-cv-2118-X** |

**DLP ENTITIES' EMERGENCY MOTION
TO DECLARE LIS PENDENS VOID**

DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC, and Marine Creek Ventures, LLC (collectively the "DLP Entities") move the Court, on an emergency basis, to void or cancel two lis pendens filed by Defendant Timothy Barton on property owned by certain of the DLP Entities.

**FACTUAL BACKGROUND**

1. Prior to the Receiver's initial appointment, the DLP Entities were party to several contracts with certain of the Receivership Entities which were the basis of an ongoing dispute between Defendant Barton and the DLP Entities:

a. DLP Winter Haven Ventures, LLC, a DLP Entity and a Florida limited liability company ("DLP Winter Haven") acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity, on October 11, 2021 (the "Winter Haven Transaction"). DeGroot Dec., ¶ 4.a.[1]

b. Orchard Farms Ventures, LLC, a DLP Entity and a Florida limited liability company ("Orchard Farms Ventures") acquired approx. 100.223 acres, generally located along Shelby Road, west of Rendon Road, City of Fort Worth, County of Tarrant, State of Texas (the "Orchard Farms Property") from Orchard Farms Village, LLC ("Orchard Farms Village"), a Receivership Entity, on December 22, 2021 (the "Orchard Farms Transaction"). The Orchard Farm Transaction included a Participation Agreement with Orchard Farms Village, and a Development Agreement with Orchard Farms Developments, LLC ("Orchard Farms Development"), a Receivership Entity, each dated December 20, 2021. *Id.*, ¶ 4.b.

c. Marine Creek Ventures, LLC, a DLP Entity and a Delaware limited liability company ("Marine Creek Ventures") acquired approx. 40.20 acres, generally located at the intersection of Loop 820 and Huffines Boulevard, City of Fort Worth, County of Tarrant, State of Texas (the "Marine Creek Property"), from Mansions Apartment Homes At Marine Creek, LLC ("Mansions"), a Receivership Entity, on December 23, 2021 (the "Mansions Creek Transaction"). The Mansions Creek Transaction included a Participation Agreement with Mansions, a Development Agreement with Marine Creek Developments, LLC ("Marine Creek Development"), a Receivership Entity, and a Construction Management Agreement with La Jolla Construction Management, LLC ("La Jolla"), a Receivership Entity, each dated as of January 2022. *Id.*, ¶ 4.c.

d. The Mansions Creek Transaction, the Winter Haven Transaction and Orchard Farms Transaction are collectively referred to as the "DLP Transactions." The Marine Creek and Orchard Farm Properties are collectively referred to as the "Properties."

2. Prior to the Receiver's appointment, disputes arose between the DLP Entities and the Receivership Entities. Timothy Barton ("Barton") and the Receivership Entities became unresponsive and began defaulting on their ongoing obligations to the DLP Entities. *Id.*, ¶ 5. On October 18, 2022, DLP notified Orchard Farms Development, Marine Creek Development, and La Jolla that they (i) were in breach under the Orchard Farms Development Agreement; Marine

---

[1] The Declaration of Barry DeGroot is attached as Exhibit 1 to this motion.

Creek Development Agreement and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach. *Id*.

3. After the Receiver's appointment, the Receiver and the DLP Entities resolved the differences between the DLP Entities and the Receivership Entities entering into a settlement agreement in December 2022. A true and correct copy of the Settlement Agreement is attached as Exhibit A to the DeGroot Declaration. On the Receiver's motion,[2] the Court entered an order ratifying the settlement agreement. Order Granting Receiver's Motion to Ratify Agreement with DLP Capital and other DLP Entities (ECF #109). Barton appealed the order ratifying the DLP settlement (ECF #112), which the 5th Circuit dismissed as moot in March 2024 (ECF #492, filed 5/6/2024).

4. Pursuant to the Settlement Agreement and subsequent court orders, the Receivership Entities released and quit-claim all participating interest in (a) the Orchard Farms Property to Orchard Farms Ventures; and (b) the Marine Creek Property to Marine Creek Ventures. The DLP Entities are and have been authorized to sell the Properties unencumbered by any competing claims from the Receivership Entities.

5. Per the Settlement Agreement and this Court's subsequent ratification, the Receivership Entities expressly "RELEASE[D], REMISED], CANCEL[ED], ACQUITT[ED] AND DISCHARG[ED] any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by a Receivership Entity against any DLP Entity." Settlement Agreement (DeGroot Dec., Exh. A.) at 4-5.

[2] The Receiver's Verified Motion to Ratify Agreement with DLP Capital and other DLP Entities (ECF #95) describes the events leading to the settlement.

6. Upon the Court's ratification of the settlement, the DLP Entities satisfied all of their contractual obligations and remitted the settlement amount of $750,000 to the Receivership estate in reliance on the Court's order and the Receiver's authority with the express expectation that all disputes pertaining to the DLP Transactions were resolved.

7. After the Court reappointed the Receiver on or about November 29, 2023, the Court entered an order ratifying, among other orders, its earlier order ratifying the DLP settlement agreement. Order Granting in Part Receiver's Blessing Motion (ECF #419) at 7-8. Barton appealed this order along with the order reappointing the Receiver on December 7, 2023 (ECF #429). The Fifth Circuit affirmed the imposition and scope of the receivership and the preliminary injunction; and dismissed the remainder of Barton's appeal. Judgment/Mandate of the Court of Appeals (ECF #652).

8. During the pendency of the appeal, Barton filed two lis pendens (collectively, the "Lis Pendens") on the Properties. The first was filed on the Orchard Farms Property on July 31, 2024. The second was filed on the Marine Creek Property on July 31, 2024. Copies of the Orchard Farms lis pendens (Exhibit 2) and the Marine Creek lis pendens (Exhibit 3) are attached. The Lis Pendens refer to Barton's appeal of the order reappointing the Receiver, which Barton has now lost. Barton did not provide notice to the DLP Entities of the filing of the lis pendens. DeGroot Dec., ¶ 12.

9. The DLP Entities are in the process of selling the Properties. During the course of preparing due diligence materials for the sale, the DLP Entities discovered the Lis Pendens. Although the sale is scheduled to close later, the due diligence period closes on October 1, 2025. As the Lis Pendens act as an involuntary lien on the property, the Lis Pendens threaten to prevent

the sale of the property. *F.D.I.C. v. Walker*, 815 F. Supp. 987, 990 (N.D. Tex. 1993) (holding that a "a *lis pendens* is the functional equivalent of an involuntary lien as it acts as a cloud on title).

## ARGUMENT AND AUTHORITIES

10. The Lis Pendens are fatally flawed and the Court should declare them void. First, the DLP Entities are not parties to this action and their property cannot be subject to a lis pendens. Second, Barton filed the Lis Pendens in violation of the Receivership Order. Third, Barton filed the Lis Pendens individually but he has no and has never claimed an interest in either of the Properties. Fourth, no Receivership Entity has made a claim on the Properties and, thus, lacks the right to file a lis pendens even if Barton could act on their behalf. Fifth, a lis pendens is not proper to preserve the appeal of a receivership order as the Lis Pendens purport to do. Sixth, Barton did not serve the Lis Pendens on the DLP Entities in accordance with the Texas Property Code, which renders them void.

11. First, the DLP Entities are not parties to this action and their interests are not at issue. Whether or not, the Court properly imposed a receivership over the Receivership Entities has nothing to do with the rights of the DLP Entities or the Properties. Importantly, the DLP Entities acquired full title to the Orchard Park and Marine Creek Properties well before this case was filed and a receiver appointed. DeGroot Dec., ¶ 4. Simply put, this is not an action related directly or even indirectly to the Properties. A lis pendens may only be filed in an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property. TEX. PROP. CODE § 12.007(a). This suit by the SEC alleging securities fraud by Barton is just not that sort of a case.

12. Second, the Lis Pendens violate the Receivership Order (ECF #417). The agreements between the Receivership Entities and the DLP Entities are Receivership Property. By

settling and releasing any claims related to those agreements, the Receiver took control over and managed them. Through the Lis Pendens, Barton sought to undo the Receiver's release. In so doing, Barton violated paragraph 32.A. of the Receivership Order, which enjoins Barton from taking any action that would "[i]nterfere with the Receiver's efforts to take control, possession, or management of any Receivership Property." In addition, Barton has no right to act on behalf of the Receivership Entities. Receivership Order, ¶ 5. Even though he is appealing the Receivership Order, Barton remains bound by it and must comply with it.

13. Third, Barton filed the Lis Pendens individually. But he has no interest in either of the Properties. All interests in the Properties and in any contracts related to them were held by one or more of the Receivership Entities. DeGroot Dec., ¶¶ 4, 14-15. A lis pendens may only be filed in an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property. TEX. PROP. CODE § 12.007(a). Barton who is nowhere in the chain of title and claims no encumbrance on the Properties simply lacks standing. His interest is merely in control over the Receivership Entities, which has nothing to do with title to, an interest in or an encumbrance the Properties. He is simply a third party who has expressed some concern about what may happen to the properties. That is not sufficient to support a lis pendens. *Olbrich v. Touchy*, 780 S.W.2d 6, 7 (Tex. App. – Houston [14th Dist.] 1989, orig. proceeding) (holding that "a mere third-party concern about the property" is not a basis for a lis pendens). Moreover, Barton is not seeking affirmative relief in this litigation. He is merely a defendant. Under Texas law, "only a party to the action *who is seeking affirmative relief* may file a lis pendens." *In re Jamail*, 156 S.W.3d 104, 107 (Tex. App. – Austin 2004, orig. proceeding) (emphasis in original).

14. Fourth, none of the Receivership Entities has asserted a claim in this or any case to title to, an interest in or an encumbrance on the Properties. Without such an assertion, the Receivership Entities could not file a lis pendens, even if Barton could act on their behalf which he cannot. *Id.* (requiring an affirmative claim to support a lis pendens). As discussed above, the settlement between the Receiver and the DLP Entities had nothing to do with title, an interest in or an encumbrance to the Properties. Rather the settlement dealt with performance of various contracts between the DLP Entities and Receivership Entities. As this Court already found in its Order Granting Receiver's Motion to Ratify Agreement with DLP Capital and other DLP Entities (ECF #109), the settlement between the DLP Entities and the Receiver did not involve title to or an interest in real estate.

15. Fifth, the Lis Pendens themselves note that they are based on Barton's appeal of the order reappointing the Receiver and are, thus, improper. *See Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1153 (5th Cir. 1988). On their face, the Lis Pendens fail to even mention title to, an interest in or an encumbrance the Properties. They are merely addressed to the imposition and operation of the Receivership. In *Texas Extrusion*, the debtor filed a lis pendens on land that was to be conveyed pursuant to a bankruptcy plan of reorganization. As with the Lis Pendens here, the purpose of lis pendens in *Texas Extrusion* was to preserve rights on appeal of an order that did not directly deal with title to real property. *Id*. The Fifth Circuit found that despite the conveyance called for by the plan, there "was no action involving title to this property, over the establishment of an interest in this property, or over the enforcement of an encumbrance against this property." *Id.* Accordingly, the lis pendens was improper were properly declared void. *Id*. The same should apply here. An order appointing a receiver does not affect title to real property in general. And, in this case, title to the Orchard Farms

or Marine Creek properties were not at issue. Rather, the issues related to contracts for development, which the Receiver settled and released years ago. The Lis Pendens are improper and should be declared void.

16. Moreover, the appeal on which the Lis Pendens are based has been resolved. The Fifth Circuit affirmed this Court's order reappointing the Receiver. Even if it were valid, the purpose of the Lis Pendens has been satisfied.

17. Sixth, Barton did not serve the Lis Pendens on the DLP Entities. DeGroot Dec., ¶ 12. Texas law requires that the party filing a lis pendens serve it on all affected parties within three days. Tex. Prop. Code § 12.007(d). Failure to make proper service as occurred here is a basis to void a lis pendens. *Id.*, § 12.0071(c)(3).

18. As the *Texas Extrusion* court held, no particular procedure is required to eliminate an improper lis pendens. *Id*. Upon hearing and notice, a federal court may therefore determine that a lis pendens is void and order it cancelled. This Court has already done so with other lis pendens filed by Barton. *See* Order Granting Motion to Approve Sale (ECF #104) (granting Receiver's motion to void lis pendens filed by Barton).

ACCORDINGLY, the DLP Entities respectfully request that the Court deem the Lis Pendens to be void and order them cancelled.

Dated: September 22, 2025

Respectfully submitted,

AKERMAN LLP

By: */s/ Michael D. Napoli*
Michael D. Napoli
Texas Bar No. 14803400
michael.napoli@akerman.com

2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339

**ATTORNEYS FOR DLP REAL ESTATE CAPITAL, INC., DLP WINTER HAVEN VENTURES, LLC, ORCHARD FARMS VENTURES, LLC, AND MARINE CREEK VENTURES, LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with counsel for the Receiver who does not oppose the relief sought in this motion. I have also attempted to confer with counsel for Barton by email on September 18, 2025 and on September 19, 2025 but Barton has not agreed to remove the lis pendens.

*/s/ Michael D. Napoli*
Michael D. Napoli

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2025, a true and correct copy of the foregoing document was served through the court's e-filing system which caused notice of filing to be sent to all counsel and pro se parties of record.

*/s/ Michael D. Napoli*
Michael D. Napoli

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| | § | |
| ***Defendants.*** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LC,** | § | |
| | § | |
| ***Relief Defendants.*** | § | |

**DECLARATION OF BARRY DEGROOT REQUESTING EXPEDITED CONSIDERATION AND IN SUPPORT OF DLP ENTITIES' EMERGENCY MOTION TO DECLARE LIS PENDENS VOID**

| | | |
|---|---|---|
| STATE OF FLORIDA | § | |
| | § | |
| COUNTY OF ST. JOHNS | § | |

1. My name is Barry DeGroot. I am over 21 years old, and my business address is 405 Golfway West Dr., St. Augustine, FL 32095. I declare under penalty of perjury that the statements and facts contained in this declaration are true and correct. I have personal knowledge of the facts set forth in this declaration. I am authorized to make this declaration and am competent to testify to the matters in this declaration.

2. I submit this Declaration in support of DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC, and Marine Creek Ventures, LLC (collectively the "***DLP Entities***") Emergency Motion to Declare Lis Pendens Void in the above-captioned lawsuit (the "***Motion***") and to request expedited consideration of the Motion.

3. I previously served as a Managing Principal and General Counsel for DLP Capital. In connection with my roles at DLP Capital, I oversaw legal aspects of the firm and its business units, including advising on corporate governance, risk management, capital structuring, and compliance. Through my role with DLP Capital, I am aware of the facts and circumstances surrounding the purported dispute that is the subject of the Motion, as well as the role of the DLP Entities and their relation to DLP Capital.

4. The DLP Entities were parties to several contracts with certain entities that are now subject to a federal receivership in this lawsuit (the "***Receivership Entities***" and each, a "***Receivership Entity***"), to wit:

a. DLP Winter Haven Ventures, LLC, a DLP Entity and a Florida limited liability company ("***DLP Winter Haven***") acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity, on October 11, 2021 (the "***Winter Haven Transaction***").

b. Orchard Farms Ventures, LLC, a DLP Entity and a Florida limited liability company ("***Orchard Farms Ventures***") acquired approx. 100.223 acres, generally located along Shelby Road, west of Rendon Road, City of Fort Worth, County of Tarrant, State of Texas (the "***Orchard Farms Property***") from Orchard Farms Village, LLC ("***Orchard Farms Village***"), a Receivership Entity, on December 22, 2021 (the "***Orchard Farms Transaction***"). The Orchard Farm Transaction included a Participation Agreement with Orchard Farms

Village, and a Development Agreement with Orchard Farms Developments, LLC ("***Orchard Farms Development***"), a Receivership Entity, each dated December 20, 2021.

c. Marine Creek Ventures, LLC, a DLP Entity and a Delaware limited liability company ("***Marine Creek Ventures***") acquired approx. 40.20 acres, generally located at the intersection of Loop 820 and Huffines Boulevard, City of Fort Worth, County of Tarrant, State of Texas (the "***Marine Creek Property***"), from Mansions Apartment Homes At Marine Creek, LLC ("***Mansions***"), a Receivership Entity, on December 23, 2021 (the "***Mansions Creek Transaction***"). The Mansions Creek Transaction included a Participation Agreement with Mansions, a Development Agreement with Marine Creek Developments, LLC ("***Marine Creek Development***"), a Receivership Entity, and a Construction Management Agreement with La Jolla Construction Management, LLC ("***La Jolla***"), a Receivership Entity, each dated as of January 2022. The Mansions Creek Transaction, the Winter Haven Transaction and Orchard Farms Transaction are collectively referred to as the "***DLP Transactions***".

5. Prior to the Receiver's appointment, disputes arose between the DLP Entities and the Receivership Entities. Timothy Barton ("***Barton***") and the Receivership Entities became unresponsive and began defaulting on their ongoing obligations to the DLP Entities. On October 18, 2022, DLP notified Orchard Farms Development, Marine Creek Development, and La Jolla that they (i) were in breach under the Orchard Farms Development Agreement; Marine Creek Development Agreement and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

6. This Court appointed Cortney C. Thomas as the Receiver (the "***Receiver***") over the estate of the Receivership Entities, pursuant to (i) the Order Appointing Receiver dated October 18, 2022, (ii) the Order Granting Receiver's Motion to Supplement Order Appointing Receiver dated

November 16, 2022, and (iii) the Order Granting Receiver Motion to Supplement Order Appointing Receiver dated December 13, 2022.

7. After the Receiver's appointment, the DLP Entities and the Receiver entered into a comprehensive settlement agreement in December 2022, resolving all disputes between the DLP Entities and the Receivership Entities (the "***Settlement Agreement***"). This Court ratified the Settlement Agreement on December 22, 2022. A true and correct copy of the Settlement Agreement is attached to the Motion as Exhibit A.

8. Promptly upon the Court's ratification of the Settlement Agreement, the DLP Entities satisfied all of their contractual obligations and remitted SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000) to the Receivership estate in reliance on the Receiver's authority and with the express expectation that all disputes pertaining to the DLP Transactions were resolved.

9. Pursuant to the Settlement Agreement and subsequent court orders, the Receivership Entities released and quit-claim all participating interest in (a) the Orchard Farms Property to Orchard Farms Ventures; and (b) the Mansion Creek Property to Marine Creek Ventures. The DLP Entities are and have been authorized to sell the Orchard Farms and Marine Creek properties unencumbered by any competing claims from the Receivership Entities.

10. Per the Settlement Agreement and this Court's subsequent ratification, the Receivership Entities expressly "*RELEASED, REMISED, CANCELED, ACQUITTED and DISCHARGED any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by a Receivership Entity against any DLP Entity*."

11. In preparing for the sale of the Orchard Farms Property and Marine Creek Property (collectively the "***Properties***" and each, a "***Property***"), the DLP Entities discovered that on July 31, 2024, nearly two years after the Settlement Agreement's effective date, Barton filed a lis pendens (the "***Lis Pendens***") as to each Property.

12. No DLP Entities was served with notice of the filing of these Lis Pendens. The DLP Entities only recently discovered their existence during due diligence for the pending sale.

13. Facially, the Lis Pendens "*challenge the appointment of receiver and the declaring of Receivership Entities as receivership entities*" but fails to (a) challenge title, or (b) assert an interest or encumbrance on the Properties.

14. Barton filed the Lis Pendens, in his individual capacity. He is not and has never been in either Properties' chain of title. He has no interest in either Property nor can he claim any encumbrance on them.

15. Even if a dispute had existed as to title, interest, or encumbrance; such a dispute did not and could not pertain to Barton's title, interest or encumbrance.

16. Title in the Properties vested in the DLP Entities well before the Receiver's appointment. Neither the Receivership nor the Settlement Agreement unwinds the pre-receivership acquisitions or otherwise adversely affects the DLP Entities' title.

17. The Receivership Entities did not file a Lis Pendens. Any interest or encumbrance held by any Receivership Entity was released, remised, canceled, acquitted and discharged in 2022 pursuant to the Settlement Agreement.

18. If a dispute existed as to title, interest or encumbrance, such a dispute was definitively resolved by this Court's ratification of the Settlement Agreement, confirmation of the Receiver's appointment, the Fifth Circuit's affirmation of this Court's appointment of the Receiver and the subsequent ratification of the Receiver's acts.

19. The due diligence period for the sale of the Orchard Farms property ends on October 1, 2025. The Lis Pendens cloud title and threaten to prevent the sale from closing. Time is of the essence. In order to avoid irreparable harm to the DLP Entities, the DLP Entities respectfully request that the Court set an emergency hearing and rule on the Motion before October 1, 2025,

20. There are no factual or legal issues that would prevent the Court from granting the DLP Entities' Emergency Motion to Declare Lis Pendens Void. The Lis Pendens were filed without notice, are improper under Texas law, do not pertain to and the underlying disputes have been fully resolved and released by the settlement agreement, which has been ratified by the Court.

21. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20 day of September, 2025.

Barry DeGroot
General Counsel, DLP Capital

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

VS. CASE NO. 3:22-CV-2118-X

TIMOTHY BARTON, ET AL.,

Defendants.

**SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS**

THIS SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS ("***Agreement***") is made and entered into by and between Cortney C. Thomas in his capacity as the Court-Appointed Receiver over the estate of the Receivership Entities, as identified in the Order Appointing Receiver dated October 18, 2022 (the "***Receivership Order***"), the Order Granting Receiver's Motion to Supplement Order Appointing Receiver dated November 16, 2022, and the Order Granting Receiver Motion to Supplement Order Appointing Receiver dated December 13, 2022, in the above captioned matter (the "***Receiver***"), including without limitation the entities identified on Exhibit A, attached hereto (collectively, the "***Receivership Entities***"); DLP Real Estate Capital, Inc., a Florida corporation ("***DLP Capital***"); DLP Winter Haven Ventures, LLC, a Florida limited liability company ("***DLP Winter Haven***"); Orchard Farms Ventures, LLC, a Florida limited liability company ("***Orchard Farms Ventures***"); and Marine Creek Ventures, LLC, a Delaware limited liability company ("***Marine Creek Ventures***") and collectively with DLP Capital, DLP Winter Haven, and Orchard Farms Venture, the "***DLP Entities***"). Each of the Receiver, the Receivership Entities and the DLP Entities is sometimes referred to herein as a "***Party***" and collectively as the "***Parties***").

WHEREAS, DLP Winter Haven acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity, on October 11, 2021. The purchase price ($2,000,0000) and the developer fee ($2,200,000) have been paid in full. That transaction is complete as of approximately May 2022 (collectively, the "***Winter Haven Transaction***").

WHEREAS, Orchard Farms Ventures acquired approx. 100.223 acres, generally located along Shelby Road, west of Rendon Road, City of Fort Worth, County of Tarrant, State of Texas from Orchard Farms Village, LLC ("***Orchard Farms Village***"), a Receivership Entity, on December 22, 2021. The purchase price ($7,856,500) was paid in full. Pursuant to that certain Participation Agreement dated December 30, 2021, Orchard Farms Ventures granted Orchard Farms Village a participation fee payable upon substantial completion or as otherwise accelerated in accordance therewith (the "***Orchard Farms Participation Agreement***"). Pursuant to that certain Development Agreement dated December 30, 2021, Orchard Farms Ventures engaged Orchard Farms Developments, LLC ("***Orchard Farms Development***"), a Receivership Entity, to provide certain development

services in accordance therewith (the "***Orchard Farms Development Agreement***"). The instrument of grant conveying the acquired property to Orchard Farms Ventures erroneously failed to include approx. 288 square feet (the "***OF Strip***") (collectively, the "***Orchard Farms Transaction***").

WHEREAS, Marine Creek Ventures acquired approx. 40.20 acres, generally located at the intersection of Loop 820 and Huffines Boulevard, City of Fort Worth, County of Tarrant, State of Texas, from Mansions Apartment Homes At Marine Creek, LLC ("***Mansions***"), a Receivership Entity, on December 23, 2021. The purchase price ($10,000,000) was paid in full. Pursuant to that certain Participation Agreement dated January ___, 2022, Mansion Creek Ventures granted Mansions a participation fee payable upon substantial completion or as otherwise accelerated in accordance therewith the (the "***Marine Creek Participation Agreement***"). Pursuant to that certain Development Agreement dated January ___, 2022, Marine Creek Ventures engaged Marine Creek Developments, LLC ("***Marine Creek Development***"), a Receivership Entity, to provide certain development services in accordance therewith (the "***Marine Creek Development Agreement***"). Pursuant to that certain Construction Management Agreement dated January ___, 2022, Marine Creek Ventures engaged La Jolla Construction Management, LLC ("***La Jolla***"), a Receivership Entity, to provide construction management services in accordance therewith (the "***Marine Creek Construction Management Agreement***")(collectively, the "***Mansions Creek Transaction***" and collectively with the Winter Haven Transaction and Orchard Farms Transaction, the "***DLP Transactions***")).

WHEREAS, Timothy Barton and the Receivership Entities became unresponsive and began defaulting on their ongoing obligations to the DLP Entities well in advance of the Receiver's appointment. On October 18, 2022, DLP notified Orchard Farms Development, Marine Creek Development, and La Jolla that they (i) were in breach under the Orchard Farms Development Agreement; Marine Creek Development Agreement and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

WHEREAS, the Receivership Order gives the Receiver the ability, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property," as well as the general powers to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." Receivership Order ¶¶ 6(H), 6(J), 39.

WHEREAS, On October 31, 2022, the Parties discussed whether continuation under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement was feasible, agreed that these agreements likely needed to be terminated, and further agreed thatthe DLP entities should proceed to mitigate their damages by engaging suitable replacement service providers.

WHEREAS, each of DLP Capital and the Receiver have independently reviewed the Orchard Farms Participation Agreement and the Mansion Creek Participation Agreement and assessed the value of the Receivership Entities' interests thereunder.

WHEREAS, there are bona fide disputes, disagreements, and controversies between the Parties pertaining to the DLP Transactions; the Parties desire to avoid the trouble, expense and uncertainty of litigation, to terminate all past, present and potential controversies between them pertaining to the DLP Transactions, and to compromise and settle all of their differences pertaining to the DLP Transactions of any type; and the Parties wish to enter into a compromise agreement relating to the Orchard Farms Participation Agreement, the Mansion Creek Participation Agreement and all claims and alleged damages which were or could have been asserted by and among the Parties in connection with the DLP Transactions, without admission by any Party of the merits of the claims, demands, charges, and/or contentions of the others; and

NOW, THEREFORE, as material considerations and inducements to and for the execution of this Agreement, and in consideration of the mutual promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto and their respective past and present parents, subsidiaries, affiliates, predecessors, successors, directors, officers, agents, representatives, employees, and assigns, and their respective heirs, executives, administrators and personal representatives, conditioned on the approval of this Agreement by the Court, hereby contract, covenant, and agree as follows:

1. Within ten (10) days of the execution of this Agreement, Receiver will file a Motion for Ratification of this Agreement ("***Motion for Ratification of the Agreement***"), seeking approval of the Court of the terms contained within the Agreement. The Parties agree that the Receiver need not obtain approval or ratification of the Agreement pursuant to the Receivership Order as outline above but nevertheless agree to seek ratification of the Agreement as outlined herein.

2. The Effective Date of this Agreement shall be the date the Court ratifies this Agreement and enters an order granting the Motion for Ratification of the Agreement.

3. Within fifteen (15) days of the Effective Date, DLP Capital shall:

   (a) remit or cause its affiliate to remit $750,000.00 to the Receiver (the "***Cash Consideration***"); and

   (b) file in the Property Records of Tarrant County, Texas, a non-material correction pursuant to §5.028, Texas Property Code substantially in the form attached hereto as Exhibit B (the "**Corrective Affidavit**").

4. Promptly upon receipt of the Cash Consideration, but in no event more than ten (10) days thereof, the Receiver on behalf of each Receivership Entity shall file instruments in the property records of Tarrant County, Texas releasing and quit-claiming all participating interests in (a) the Orchard Farms property to Orchard Farms Ventures; and (b) the Mansion Creek property to Marine Creek Ventures.

The Parties hereby acknowledge and agree that they are entering this Agreement for the sole and exclusive purpose of compromising and settling any and all claims arising out of the DLP Transactions and that this Agreement is entered into in full and final settlement of all such alleged or unalleged claims or causes of action, as well as any and all alleged or unalleged damages relating thereto. The preceding sentence notwithstanding, all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability pertaining to title of the conveyed property under any of the DLP Transactions (the "***Reserved Claims***") are expressly reserved and survive this Agreement.

The Parties further acknowledge and agree that they have entered into this Agreement for the purpose and intent of fully and finally compromising and resolving doubtful and disputed claims pertaining to the DLP Transactions by and between the Parties and to avoid the uncertainty of future litigation or arbitration. The Parties agree and understand that this is a compromise of doubtful and disputed claims, and that neither (a) the entry into this Agreement, nor (b) any recital contained herein, shall be construed or interpreted as an admission of liability by any party hereto.

By execution hereof, each Party represents, covenants and warrants that: (a) it has not, in whole or in part, conveyed, assigned or in any manner transferred, or subrogated any claims arising out of the DLP Transactions, to any third party other than to their attorneys of record, and (b) its signatory hereto is authorized to act in the capacities indicated.

Conditioned on full performance by the Receivership Entities and the Receiver of the obligations of this Agreement, DLP Capital and each DLP Entity does hereby RELEASE, REMISE, CANCEL, ACQUIT and DISCHARGE any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by any DLP Entity against the Receivership Entities or the Receiver, its past or present parents, predecessors, subsidiaries or affiliates, and their respective past or present officers, directors, shareholders, partners, agents, employees, attorneys, accountants or representatives, and their respective heirs, executors, personal representatives, successors and assigns, and anyone claiming by, through or under any or all of them (collectively, the "***Receivership Affiliated Persons***"), arising out of the DLP Transactions, which existed or may have existed prior to the date of this Agreement, *provided however*, that nothing contained in this paragraph shall release any obligations arising out of this Agreement or the Reserved Claims.

Conditioned on full and timely performance by DLP Capital of the obligations of this Settlement Agreement, the Receivership Entities do hereby RELEASE, REMISE, CANCEL, ACQUIT and DISCHARGE any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by a Receivership Entity against any DLP Entity, its past or present parents, predecessors,

subsidiaries or affiliates, and their respective past or present officers, directors, shareholders, partners, agents, employees, attorneys, accountants or representatives, and their respective heirs, executors, personal representatives, successors and assigns, and anyone claiming by, through or under any or all of them, including without limitation Barry W. DeGroot, Robert Peterson, and Donald Wenner (collectively, the "***DLP Affiliated Persons***"), arising out the DLP Transactions, which existed or may have existed prior to the date of this Agreement, including without limitation the participation fees under the Orchard Farms Participation Agreement and the Mansion Creek Participation Agreement; *provided however*, that nothing contained in this paragraph shall release any obligations arising out of this Agreement or the Reserved Claims.

Each Party completely and unconditionally releases and forever discharges each other from any claim that this Agreement was induced by any fraudulent or negligent act or omission, and/or resulted from any actual or constructive fraud, negligent misrepresentation, conspiracy, breach of fiduciary duty, breach of confidential relationship, or the breach of any other duty under law or in equity. The Parties expressly understand and agree that the exchange of releases does not apply to actions brought by any of them to enforce the terms of this Agreement or the Reserved Claims. The Parties shall reserve and each has reserved all rights against the other to enforce the terms of this Agreement and pursue the Reserved Claims.

The Parties hereby represent and confirm that they have not filed or otherwise initiated any pending lawsuit, complaint, charge, or other proceeding against each other in any local, state, or federal court or agency. The Parties each covenant and agree that they will not at any time hereafter commence, maintain, or prosecute any action at law or otherwise, or assert any claim, against the other for any actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands released herein.

The Parties agree that the rights and obligations covered by this Agreement shall survive execution of these releases.

Receiver and the Receivership Entities further agree to DEFEND, INDEMNIFY AND HOLD HARMLESS the DLP Entities from any claim or cause of action of any kind filed or made against any of them which has been or may subsequently be brought by, through, or on behalf of a Receivership Entity and arising from any claim released under this Agreement. Each DLP Entities, likewise, agrees to DEFEND, INDEMNIFY AND HOLD HARMLESS the Receiver and the Receivership Entities from any claim or cause of action of any kind hereafter filed or made against any of them which has been or may subsequently be brought by, through, or on behalf of any DLP Entity and arising from any claim released under this Agreement. This indemnity is conditioned upon prompt notice by the party claiming a right to indemnity on any such claim to the party against whom indemnity is sought and the party against whom indemnity is sought being given the right to defend the claim on which indemnity is sought. The Parties warrant they are not presently aware of any facts that would give rise to a claim for indemnity under this Section. The right to indemnity in this Section is limited to the Parties, as herein defined, and shall not be construed as granting a right to indemnity in favor of any other entities or persons related to or affiliated with the released parties

All parties to this Agreement will bear their own attorney's fees, expenses and costs in this lawsuit.

The Parties further warrant and represent that they will cooperate fully and execute any and all supplementary documents and to take such additional actions which reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

If any single section or clause of this Agreement should be found unenforceable, it shall be severed and the remaining sections and clauses shall be enforced in accordance with the intent of this Agreement. Texas law shall govern the validity and interpretation of this Agreement.

The Parties agree that one or more waivers or breaches of any covenant, term, or provision of this Agreement by any party shall not be construed as a waiver of a subsequent breach of the same covenant, term, or provision, or as a waiver or breach of any other covenant, term, or provision.

This Agreement contains the entire understanding between the Parties and supersedes all prior agreements and understandings, oral or written, relating to the subject matter of this Agreement. The Parties expressly acknowledge and agree that no provisions, representations, or warranties whatsoever were made, express or implied, other than those contained in this Agreement and that they are not relying on any statement or communication from the other party other than those expressly contained in this Agreement in deciding to execute this Agreement. This Agreement shall not be modified, amended, or terminated unless such modification, amendment, or termination is executed in writing and signed by authorized representatives of the affected parties. The Parties hereby waive their right to make future oral agreements covering the same subject as this Agreement.

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party. Any ambiguity, doubt or question as to applicability of the Parties' respective releases contained in this Agreement shall be resolved in all events in favor of waiver, release, relinquishment and disavowal of any possible claims. The Parties agree that the waivers, releases, relinquishments and disavowals herein granted shall be with respect to claims, interests, rights, remedies and causes of action known or unknown, matured or unmatured, contingent or direct, existing or hereafter arising. The Parties acknowledge (after full consideration of the consequences and after being fully advised in the premises) that the waiver and relinquishment of their respective claims contained in this Agreement is full and complete, whether or not the factual basis for their respective claims or defenses are currently known to them.

The Parties, and each of them, hereby represent and certify that they: (1) have had an opportunity to read all of this Agreement; (2) have been given a fair opportunity to, and have been advised to, discuss and negotiate the terms of this Agreement by and through their legal counsel; (3) have been given a reasonable time to consider the Agreement; (4) understand the provisions of this Agreement; (5) have had ample opportunity to seek and have received advice from an attorney or other advisors regarding this Agreement or have otherwise waived their right to do so; (6) have determined that it is in their best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation by the other party or its legal counsel or other representative not contained in

this Agreement; (8) have had sufficient time to investigate the existence of the claims and other rights hereby released and have satisfied themselves with respect to the same based upon their investigation and the advice of counsel, (9) are fully authorized to execute this Agreement in the capacities in which it is executed and (10) enter into this Agreement knowingly and voluntarily without coercion, duress, or fraud.

The Parties agree that this Agreement is supported by good, valuable, and sufficient consideration.

The Parties understand and agree that the facts in respect of which this Agreement is made may hereafter prove to be other than, or different from the facts now known by either of them or believed by either of them to be true as set forth in this Agreement. The Parties expressly accept and assume the risk of the facts proving to be so different, and each of the them agrees that all of the terms of this Agreement shall be, in all respects, effective and binding, and not subject to termination or rescission by either of them due to any such difference in facts.

The Parties agree that this Agreement may be signed in multiple counterparts, each of which shall be deemed an original for all purposes.

**The Receivership Entities,**

By: ~~signature~~ Receiver
Cortney C. Thomas, Receiver

**THE STATE OF** Texas §

**COUNTY OF** Dallas §

BEFORE ME, the undersigned authority, on this day personally appeared, Cortney C. Thomas, known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

KIMBERLEY OROURKE
Notary Public, State of Texas
Comm. Expires 05-16-2026
Notary ID 6283194

Kimberley O'Rourke
Notary Public, the State of Texas

**DLP Real Estate Capital, Inc.,**
a Florida Corporation.

By: ______________________
Name: Barry W. DeGroot
Its: Secretary

**THE STATE OF FLORIDA§**

**COUNTY OF ST. JOHNS§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Secretary of DLP Capital, known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

Sandra Lee Muise
Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**DLP Winter Haven Ventures LLC,**
a Florida limited liability company

By: ______________________
Name: Barry W. DeGroot
Its: Vice President

**THE STATE OF FLORIDA§**

**COUNTY OF ST. JOHNS§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of DLP Winter Haven Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

Sandra Lee Muise
Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**Orchard Farms Ventures, LLC,**
a Florida limited liability company

By: [signature]

Name: Barry W. DeGroot

Its: Vice President **THE STATE OF FLORIDA§**

**COUNTY OF ST. JOHNS§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of Orchard Farms Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

[signature]

Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**Marine Creek Ventures, LLC,**
a Delaware limited liability company

By: ______________________
Name: Barry W. DeGroot
Its: Vice President

**THE STATE OF FLORIDA§**

**COUNTY OF ST. JOHNS§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of Marine Creek Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

______________________
Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**Exhibit A**
**Receivership Entities**

## 1. Receivership Entities

a. Wall007, LLC,
b. Wall009, LLC,
c. Wall010, LLC,
d. Wall011, LLC,
e. Wall012, LLC,
f. Wall016, LLC,
g. Wall017, LLC,
h. Wall018, LLC,
i. Wall019, LLC,
j. Carnegie Development, LLC,
k. DJD Land Partners, LLC,
l. LDG001, LLC,
m. BM318 LLC;
n. D4DS LLC;
o. D4FR LLC;
p. D4KL LLC;
q. Enoch Investments LLC;
r. FHC Acquisition LLC;
s. Goldmark Hospitality LLC;
t. JMJ Acquisitions LLC;
u. JMJ Development LLC;
v. JMJAV LLC;
w. JMR100 LLC;
x. Lajolla Construction Management LLC;
y. Mansions Apartment Homes at Marine Creek LLC;
z. MO 2999TC, LLC;
aa. Orchard Farms Village LLC;
bb. Villita Towers LLC; and
cc. 126 Villita LLC

(collectively, “***Receivership Entities***”).

**Exhibit B**

**Correction Affidavit**

**(Non-material correction pursuant to §5.028, Texas Property Code)**

---

Date: ______________
Affiant: ______________

Description of Original Instrument (include name of Instrument, date, parties and recording information):

Special Warranty Deed from Orchard Farms Village, LLC, a Texas limited liability company to Orchard Farms Ventures LLC, a Florida limited liability company, dated December 31, 2021, recorded March 8, 2022 at under Clerk's File No. D222061225, of the Public Records of Tarrant County, Texas.

Affiant on oath swears that the following statements are true and within the personal knowledge of Affiant:

1. My name is _____. My address is ____________. I am over the age of eighteen (18) years and am otherwise competent to make this Correction Affidavit.

2. I am the __________ [title/capacity] of _________________[name of entity] which was the grantee named in that certain deed executed by ______________ dated _____________ and recorded under Clerk's File No. ________________, Official Public Records, ________ County, Texas.

3. I am making this Affidavit as a correction instrument pursuant to §5.028 of the Texas Property Code, with regard to the following unintended error in the Original Instrument:

   legal description included two incorrect distance measurements in the metes and bounds description

4. The Original Instrument should be corrected with respect to the error described above, this being a non-material change to the Original Instrument:

   1) metes and bounds call of "N 10 14'41"W, a distance of 75.27 feet" is revised to "N 10 14'41"W, a distance of 73.53 feet"; and
   2) metes and bounds call of "S 10 14'41"E, a distance of 724.61 feet" is revised to "S 10 14'41"E, a distance of 722.87 feet".

   The corrected legal description is documented in the legal description attached to this Affidavit as Exhibit "A".

5. I have given notice of this correction of the Original Instrument by sending a copy of this Correction Affidavit by mail to each party to the Original Instrument in accordance with §5.028 (d) (2) of the Texas Property Code.

AFFIANT:

______________________________

STATE OF _______ §

COUNTY OF ______ §

SWORN TO AND SUBSCRIBED before me on this ___________ day of ____, 20__, by _______, to certify which witness my hand and seal of office.

My Commission Expires:

_______________________________________
Notary Public, State of ___

Notary Name Printed:
_______________________________________

**CORRECTION AFFIDAVIT AS TO A RECORDED ORIGINAL INSTRUMENT**
**(Texas)**

<u>Exhibit A</u>
Legal Description of Land:
(Orchard Farms)

BEING a tract of land situated in Block 20 and Block 23 of the Shelby County School Land Survey, Abstract No. 1375, City of Fort Worth, Tarrant County, Texas, being a portion of that tract of land as described in deed to Wall 007, LLC, recorded in County Clerk's File No.D217259397, Official Public Records, Tarrant County, Texas (OPRTCT), and being more particularly described as follows:

BEGINNING at a mag nail with shiner stamped JPH LAND SURVEYING found in Rendon Road (R.O.W. varies) at the southeast corner of the final plat of Everman Junior High School #2 Addition, an addition to the City of Fort Worth, Tarrant County, Texas as recorded in County Clerk's File No. D209253723, OPRTCT and the most easterly northeast corner of said Wall 007 tract;

THENCE S 00 29'40" E, within said Rendon Road, along the east line of said Wall 007 tract, a distance of 866.90 feet to the southeast corner of the herein described tract of land, from which a 1/2" rebar capped found at the southeast corner of said Wall 007 tract bears S 00 29'40" E, 231.90 feet;

THENCE departing said Rendon Road, across said Wall 007 tract, as follows:

S 87 39'08" W, a distance of 54.11 feet to the beginning of a curve to the left, radial to said line;

Southeasterly, along said curve, having a radius of 1755.00 feet, a central angle of 01 37'57", an arc distance of 50.00 feet, and a chord that bears S 03 09'51" E, 50.00 feet to the end of said curve;

S 39 46'03" W, non-tangent to said curve, a distance of 21.58 feet;

S 83 4537" W, a distance of 110.25 feet to the beginning of a tangent curve to the left;

Southwesterly, along said curve, having a radius of 1205.00 feet, a central angle of 07 53'33", an arc distance of 165.99 feet, and a chord that bears S 79 48'50" W, 165.86 feet to the end of said curve;

S 75 52'03" W, tangent to said curve, a distance of 169.27 feet to the beginning of a tangent curve to the right;

Southwesterly, along said curve, having a radius of 1095.00 feet, a central angle of 13 33'42", an arc distance of 259.18 feet, and a chord that bears S 82 38'54" W, 258.58 feet to the end of said curve;

S 89 25'45" W, tangent to said curve, a distance of 286.15 feet; N

45 34'15" W, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 115.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 50.00 feet;

**N** 45 34'15" W, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 215.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

**N** 00 34'15" W, a distance of 60.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 205.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 200.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 118.00 feet;

S 89 25'45" W, a distance of 50.00 feet;

S 44 25'45" W, a distance of 14.14 feet;

S 89 25'45" W, a distance of 1015.66 feet;

N 50 24'28" W, a distance of 15.28 feet;

N 10 14'41" W, a distance of 73.53 feet;

S 79 45'19" W, a distance of 166.00 feet;

S 10 14'41" E, a distance of 722.87 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 81.44 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 83.47 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 16.23 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 83.47 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 49.46 feet to the beginning of tangent curve to left;

Southwesterly, having a radius of 525.00 feet, a central angle of 03 41'01", an arc distance of 33.75 feet, and a chord that bears S 87 35'14" W, 33.75 feet to the end of said curve;

N 52 31'21" W, non-tangent to said curve, a distance of 14.80

feet; S 83 46'44" W, a distance of 16.04 feet;

S 36 03'24" W, a distance of 13.82 feet to the beginning of a non-tangent curve to the left;

Southwesterly, along said curve, having a radius of 525.00 feet, a central angle of 02 03'25", an arc distance of 18.85 feet, and a chord that bears S 80 47'01" W, 18.85 feet to the end of said curve;

S 79 45'19" W, tangent to said curve, a distance of 63.17

feet; N 55 14'41" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 50.00 feet;

S 34 45'19" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 111.00 feet to a point in the west line of said Wall 007 tract and the east line of Tract II as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, from which a 5/8" rebar capped JACOBS found at the southwest corner of said Wall 007 tract and an angle point in the east line of said Crimson Ridge Land Partners Tract II bears S 10 14'41" E, 489.49 feet;

THENCE N 10 14'41" W, along the west line of said Wall 007 tract and the east line of said Crimson Ridge Land Partners Tract II and Tract I as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, a distance of 1945.20 feet to a 1/2" rebar found at the northeast corner of said Crimson Ridge Land Partners Tract I and the southeast

corner of a tract of land as described in deed to Lieven J. Van Riet, recorded in Volume 7229, Page 809, Deed Records, Tarrant County, Texas;

THENCE N 10 14'21" W, along the west line of said Wall 007 tract and the east line of said Riet tract, a distance of 189.63 feet (deeds 189.63 feet & 189.74 feet) to a 1/2" rebar found in the south line of Shelby Road (R.O.W. varies);

THENCE N 10 14'55" W, along the west line of said Wall 007 tract and within said Shelby Road, a distance of 30.53 feet to a 1" rebar found at the most westerly northwest corner of said Wall 007 tract;

THENCE within said Shelby Road, along the north line of said Wall 007 tract, as follows:

**N** 89 59'58" E, a distance of 101.56 feet to a 1" rebar found;

**N** 10 15'06" W, a distance of 28.88 feet to a point for corner;

**N** 89 28'44" E, a distance of 644.79 feet to a corner of said Wall 007 tract and the northwest corner of a tract of land as described in deed to Bean Electrical, Inc., recorded in County Clerk's File No. D21513149, OPRTCT;

THENCE S 00 38'25" E, departing said Shelby Road, along a reentrant line of said Wall 007 tract and the west line of said Bean Electrical tract, at a distance of 28.45 feet (deeds 28.45 & 28.38 feet) passing a 1" rebar found, continuing a total distance of 657.00 feet to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southwest corner of said Bean Electrical tract;

THENCE N 89 3226" E, along a north line of said Wall 007 tract, the south line of said Bean Electrical tract, and the south line of a tract of land as described in deed to Michael E. Cleveland and Carolyn G. Cleveland, recorded in County Clerk's File No. D205045974, OPRTCT, a distance of 660.30 feet (deeds 660.30 feet 659.00 feet) to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southeast corner of said Cleveland tract;

THENCE N 00 32'37" W, along a reentrant line of said Wall 007 tract and the east line of said Cleveland tract, at a distance of 641.1O feet passing a 1/2" rebar found continuing a total distance of 656.96 feet (deeds 656.96 feet & 657.00 feet) to a point for corner in said Shelby Road at a corner of said Wall 007 tract and the northeast corner of said Cleveland tract;

THENCE N 89 31'1O" E, within said Shelby Road, along the north line of said Wall 007 tract, a distance of 403.83 feet to a point for corner at the most northerly northeast corner of said Wall 007 tract and the northwest corner of said Everman Junior High School #2 Addition, from which a mag nail with shiner stamped JPH LAND SURVEYING found at the northeast corner of said Addition bears N 89 31 '10" E, 1571.46 feet (plat 1571.58 feet), and a 5/8" rebar capped JACOBS found bears S 00 51'10" E, 15.77 feet;

THENCE departing said Shelby Road, along the line common to said Wall 007 tract and said Everman Junior High School #2 Addition, as follows:

S 00 31'03" E, at a called distance of 80.40 feet passing the south line of said Shelby Road and the northwest corner of Lot 1, Block 1 of said Everman Junior High School #2 Addition, continuing a total distance of 260.76 feet (deed 260.76 feet, plat 260.90 feet) to a 1/2" rebar capped JPH LAND

SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 82 10' E, 0.25 feet;

S 45 30'57" E, a distance of 1809.96 feet (deed 1809.96 feet, plat 1810.00 feet) to a 1/2" rebar capped JPH LAND SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 67 50' E, 0.20 feet;

N 89 30'20" E, at a distance of 232.75 feet (deed 232.75 feet, plat 232.89 feet) passing a 1/2" rebar capped JPH LAND SURVEYING found at the southeast corner of said Lot 1, Block 1 and the west line of said Rendon Road, continuing a total distance of 291.04 feet (deed 291.04 feet, plat 291.06 feet) to the POINT OF BEGINNING and containing 4,365,714 square feet or 100.223 acres of land.

# EXHIBIT 2

**NOTICE OF LIS PENDENS**

STATE OF TEXAS §
§
COUNTY OF DALLAS §

NOTICE IS HEREBY GIVEN that in Cause No. 3:22-cv-02118-X, styled **SEC vs. Barton**, commenced in the United States District Court for the Northern District of Texas Dallas Division, the defendant, Timothy Barton, has filed an appeal to the Fifth Circuit Court of Appeals against the order appointing receiver [Dkt No. 417], filed on November 29, 2023, and entered on November 29, 2023. This notice may affect the title to the real property herein set forth.

The Litigation seeks to address challenge the appointment of receiver and the declaring Orchard Farms Village, LLC under receivership entities, which has significant future value. The defendant argues that the pending appeal and the unresolved issues regarding the receivership's management be resolved into its vacatur in entirety. The property is specifically described on **exhibit A** attached, which has a common address of Shelby Road, west of Rendon Road, in Fort Worth, Texas, which will affect title to such real property, more particularly described in **Exhibit "A"** attached hereto and which is incorporated herein by reference.

SIGNED this 31 day of July, 2024.

TIMOTHY BARTON

By: ____________________
Timothy Barton, Pro Se

STATE OF TEXAS §
§
COUNTY OF DALLAS §

ROBERT CHARLES MURRAY, JR.
Notary Public, State of Texas
Comm. Expires 07-27-2028
Notary ID 130756671

On the 31 day of July, 2024, this instrument was acknowledged before me by Timothy Barton.

____________________
Notary Public, State of Texas

D224135503
07/31/2024 04:59 PM Page: 1 of 5 Fees: $36.00
LIS PENDENS
SUBMITTER: TIMOTHY BARTON

MARY LOUISE NICHOLSON
COUNTY CLERK

Unofficial Copy

<u>Exhibit A</u>
Legal Description of Land
(Orchard Farms)

BEING a tract of land situated in Block 20 and Block 23 of the Shelby County School Land Survey, Abstract No. 1375, City of Fort Worth, Tarrant County, Texas, being a portion of that tract of land as described in deed to Wall 007, LLC, recorded in County Clerk's File No.D217259397, Official Public Records, Tarrant County, Texas (OPRTCT), and being more particularly described as follows:

BEGINNING at a mag nail with shiner stamped JPH LAND SURVEYING found in Rendon Road (R.O.W. varies) at the southeast corner of the final plat of Everman Junior High School #2 Addition, an addition to the City of Fort Worth, Tarrant County, Texas as recorded in County Clerk's File No. D209253723, OPRTCT and the most easterly northeast corner of said Wall 007 tract;

THENCE S 00 29'40" E, within said Rendon Road, along the east line of said Wall 007 tract, a distance of 866.90 feet to the southeast corner of the herein described tract of land, from which a 1/2" rebar capped found at the southeast corner of said Wall 007 tract bears S 00 29'40" E, 231.90 feet;

THENCE departing said Rendon Road, across said Wall 007 tract, as follows:

S 87 39'08" W, a distance of 54.11 feet to the beginning of a curve to the left, radial to said line;

Southeasterly, along said curve, having a radius of 1755.00 feet, a central angle of 01 37'57", an arc distance of 50.00 feet, and a chord that bears S 03 09'51" E, 50.00 feet to the end of said curve;

S 39 46'03" W, non-tangent to said curve, a distance of 21.58 feet;

S 83 4537" W, a distance of 110.25 feet to the beginning of a tangent curve to the left;

Southwesterly, along said curve, having a radius of 1205.00 feet, a central angle of 07 53'33", an arc distance of 165.99 feet, and a chord that bears S 79 48'50" W, 165.86 feet to the end of said curve;

S 75 52'03" W, tangent to said curve, a distance of 169.27 feet to the beginning of a tangent curve to the right;

Southwesterly, along said curve, having a radius of 1095.00 feet, a central angle of 13 33'42", an arc distance of 259.18 feet, and a chord that bears S 82 38'54" W, 258.58 feet to the end of said curve;

S 89 25'45" W, tangent to said curve, a distance of 286.15 feet; N

45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 115.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 215.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 60.00 feet;

Unofficial Copy

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 49.46 feet to the beginning of tangent curve to left;

Southwesterly, having a radius of 525.00 feet, a central angle of 03 41'01", an arc distance of 33.75 feet, and a chord that bears S 87 35'14" W, 33.75 feet to the end of said curve;

N 52 31'21" W, non-tangent to said curve, a distance of 14.80

feet; S 83 46'44" W, a distance of 16.04 feet;

S 36 03'24" W, a distance of 13.82 feet to the beginning of a non-tangent curve to the left;

Southwesterly, along said curve, having a radius of 525.00 feet, a central angle of 02 03'25", an arc distance of 18.85 feet, and a chord that bears S 80 47'01" W, 18.85 feet to the end of said curve;

S 79 45'19" W, tangent to said curve, a distance of 63.17

feet; N 55 14'41" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 50.00 feet;

S 34 45'19" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 111.00 feet to a point in the west line of said Wall 007 tract and the east line of Tract II as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, from which a 5/8" rebar capped JACOBS found at the southwest corner of said Wall 007 tract and an angle point in the east line of said Crimson Ridge Land Partners Tract II bears S 10 14'41" E, 489.49 feet;

THENCE N 10 14'41" W, along the west line of said Wall 007 tract and the east line of said Crimson Ridge Land Partners Tract II and Tract I as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, a distance of 1945.20 feet to a 1/2" rebar found at the northeast corner of said Crimson Ridge Land Partners Tract I and the southeast

Unofficial Copy

corner of a tract of land as described in deed to Lieven J. Van Riet, recorded in Volume 7229, Page 809, Deed Records, Tarrant County, Texas;

THENCE N 10 14'21" W, along the west line of said Wall 007 tract and the east line of said Riet tract, a distance of 189.63 feet (deeds 189.63 feet & 189.74 feet) to a 1/2" rebar found in the south line of Shelby Road (R.O.W. varies);

THENCE N 10 14'55" W, along the west line of said Wall 007 tract and within said Shelby Road, a distance of 30.53 feet to a 1" rebar found at the most westerly northwest corner of said Wall 007 tract;

THENCE within said Shelby Road, along the north line of said Wall 007 tract, as follows:

N 89 59'58" E, a distance of 101.56 feet to a 1" rebar found;

N 10 15'06" W, a distance of 28.88 feet to a point for corner;

N 89 28'44" E, a distance of 644.79 feet to a corner of said Wall 007 tract and the northwest corner of a tract of land as described in deed to Bean Electrical, Inc., recorded in County Clerk's File No. D215131149, OPRTCT;

THENCE S 00 38'25" E, departing said Shelby Road, along a reentrant line of said Wall 007 tract and the west line of said Bean Electrical tract, at a distance of 28.45 feet (deeds 28.45 & 28.38 feet) passing a 1" rebar found, continuing a total distance of 657.00 feet to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southwest corner of said Bean Electrical tract;

THENCE N 89 3226" E, along a north line of said Wall 007 tract, the south line of said Bean Electrical tract, and the south line of a tract of land as described in deed to Michael E. Cleveland and Carolyn G. Cleveland, recorded in County Clerk's File No. D205045974, OPRTCT, a distance of 660.30 feet (deeds 660.30 feet 659.00 feet) to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southeast corner of said Cleveland tract;

THENCE N 00 32'37" W, along a reentrant line of said Wall 007 tract and the east line of said Cleveland tract, at a distance of 641.1O feet passing a 1/2" rebar found continuing a total distance of 656.96 feet (deeds 656.96 feet & 657.00 feet) to a point for corner in said Shelby Road at a corner of said Wall 007 tract and the northeast corner of said Cleveland tract;

THENCE N 89 31'1O" E, within said Shelby Road, along the north line of said Wall 007 tract, a distance of 403.83 feet to a point for corner at the most northerly northeast corner of said Wall 007 tract and the northwest corner of said Everman Junior High School #2 Addition, from which a mag nail with shiner stamped JPH LAND SURVEYING found at the northeast corner of said Addition bears N 89 31 '10" E, 1571.46 feet (plat 1571.58 feet), and a 5/8" rebar capped JACOBS found bears S 00 51'10" E, 15.77 feet;

THENCE departing said Shelby Road, along the line common to said Wall 007 tract and said Everman Junior High School #2 Addition, as follows:

S 00 31'03" E, at a called distance of 80.40 feet passing the south line of said Shelby Road and the northwest corner of Lot 1, Block 1 of said Everman Junior High School #2 Addition, continuing a total distance of 260.76 feet (deed 260.76 feet, plat 260.90 feet) to a 1/2" rebar capped JPH LAND

Unofficial Copy

SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 82 10' E, 0.25 feet;

S 45 30'57" E, a distance of 1809.96 feet (deed 1809.96 feet, plat 1810.00 feet) to a 1/2" rebar capped JPH LAND SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 67 50' E, 0.20 feet;

N 89 30'20" E, at a distance of 232.75 feet (deed 232.75 feet, plat 232.89 feet) passing a 1/2" rebar capped JPH LAND SURVEYING found at the southeast corner of said Lot 1, Block 1 and the west line of said Rendon Road, continuing a total distance of 291.04 feet (deed 291.04 feet, plat 291.06 feet) to the POINT OF BEGINNING and containing 4,365,714 square feet or 100.223 acres of land.

Unofficial Copy

TARRANT COUNTY, TEXAS

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS OF
TARRANT COUNTY, TEXAS
07/31/2024 04:59 PM

D224135503
LIS PENDENS
Pages: 5
Fees: $36.00

MARY LOUISE NICHOLSON
COUNTY CLERK

# EXHIBIT 3

**NOTICE OF LIS PENDENS**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

NOTICE IS HEREBY GIVEN that in Cause No. 3:22-cv-02118-X, styled **SEC vs. Barton**, commenced in the United States District Court for the Northern District of Texas Dallas Division, the defendant, Timothy Barton, has filed an appeal to the Fifth Circuit Court of Appeals against the order appointing receiver [Dkt No. 417], filed on November 29, 2023, and entered on November 29, 2023. This notice may affect the title to the real property herein set forth.

The Litigation seeks to address challenge the appointment of receiver and the declaring Mansions Apartment Homes at Marine Creek LLC under receivership entities, which has significant future value. The defendant argues that the pending appeal and the unresolved issues regarding the receivership's management be resolved into its vacatur in entirety. The property is specifically described on **exhibit A** attached, which has a common address of intersection of Loop 820and Huffines Blvd., City of Fort Worth, County of Tarrant, TX, which will affect title to such real property, more particularly described in **Exhibit "A"** attached hereto and which is incorporated herein by reference.

SIGNED this 31 day of July, 2024.

TIMOTHY BARTON

By: ______________________
Timothy Barton, Pro Se

STATE OF TEXAS §
§
COUNTY OF DALLAS §

ROBERT CHARLES MURRAY, JR.
Notary Public, State of Texas
Comm. Expires 07-27-2028
Notary ID 130788671

On the 31 day of July, 2024, this instrument was acknowledged before me by Timothy Barton.

Notary Public, State of Texas

D224135502
07/31/2024 04:59 PM Page: 1 of 5 Fees: $36.00
LIS PENDENS
SUBMITTER: TIMOTHY BARTON

MARY LOUISE NICHOLSON
COUNTY CLERK

Unofficial Copy

**EXHIBIT "A"**
**PROPERTY LEGAL DESCRIPTION**
**(will be corrected)**

Being Lot 1, Block 1; Lot 1, Block 2; and Lots 2 and 3, Block 3 of MARINE CREEK APARTMENTS, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Cabinet A. Slide 8820, Deed Records, Tarrant County, Texas.

TRACTS 1 & 2:

Being a tract of land situated in L.H. Brown Survey, Abstract No, 213 and the T. & P.R.C.O. Survey, Abstract No. 1472, in the City of Fort Worth, Tarrant County, Texas, being all of Lots 2 & 3, Block 3 of MARINE CREEK APARTMENTS, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Cabinet A, Slide 8820, Deed Records, Tarrant County, Texas, and being that same tracts of land conveyed to Marine Creek land Partners, L.P, by Deed recorded b Instrument No. D212240140; Official Public Records, Tarrant County, Taxes, and being more particularly described by meets and bounds as follows:

Beginning at a 5/8 inch iron rod found for corner in the North line of Shadydell Drive (a 60' right-of-way), said point being the Southeast corner of Lot 1R, Block 3 of Marine Creek Apartments, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Cabinet A, Slide 8912, Map Records, Tarrant County, Texas;

Thence North 27 degrees 41 minutes 29 seconds West along the East line of said Lot 1R, Block 3, a distance of 950,88 feet to a 5/8 inch iron rod found for corner, said point being the Northeast corner of said Lot 1R, Block 3, and being in the South line of a tract of land conveyed to the City of Fort Worth by Deed recorded in Volume 7226, Page 721, Deed Records, Tarrant County, Texas;
Thence traversing along the exterior line of said City of Fort Worth tract as follows:

South 88 degrees 00 minutes 01 seconds East, a distance of 110.13 feet to a 5/8 inch iron rod found for corner;

North 86 degrees 00 minutes 56 seconds East, a distance of 866.87 feet to a 1/2 inch iron rod with a yellow cap stamped "TXHS" set for corner;

North 80 degrees 57 minutes 49 seconds East, a distance of 320.54 feet to a 5/8 inch Iron rod found for corner;

South 75 degrees 41 minutes 36 seconds East, a distance of 330.06 feet to a 5/8 inch iron rod found for corner;

North 61 degrees 12 minutes 35 seconds East, a distance of 247. 16 feet to a 5/8 inch iron rod found for corner;

North 73 degrees 24 minutes 41 seconds East, a distance of 149.78 feet to a 1/2 inch iron rod found for

Unofficial Copy

corner;

South 32 degrees 31 minutes 58 seconds East, a distance of 210.60 feet to a 1/2 inch iron rod found for corner;

South 29 degrees 46 minutes 46 seconds West, a distance of 180.02 feet to a 1/2 inch iron rod found for corner;

South 83 degrees 07 minutes 55 seconds West, a distance of 99.67 feet to a 1/2 inch iron rod found for corner;

South 53 degrees 19 minutes 33 Seconds West, a distance of 145.03 feet to a 1/2 inch iron rod found for corner;

South 38 degrees 18 minutes 42 seconds West, a distance of 364.19 feet to a 1/2 inch iron rod found lot corner;

South 20 degrees 36 minutes 52 seconds West, a distance of 298.09 feet to a 1/2 inch iron rod found for corner;

North 79 degrees 37 minutes 24 seconds West, a distance of 388.02 feet to a 1/2 inch iron rod with a yellow cap stamped "TXHS" set for corner;

North 68 degrees 07 minutes 25 seconds West, a distance of 241.24 feet to a 5/8 inch iron rod found for corner, said point being in the Southeast line of aforementioned Shadydell Drive;

Thence North 49 degrees 05 minutes 44 seconds East, along the Southeast line of said Shadydell Drive, a distance of 204.71 feet to a 5/8 inch iron rod found for corner, sold point being in a curve to the left having a radius of 50.00 feet, a delta of 286 degrees 15 minutes 37 seconds and a chord bearing North, 40 degrees 54 minutes 49 seconds West, a distance of 60.00 feet;

Thence along said curve to, the left and Shadydell Drive; an arc length of 249.81 feet to a 518 inch iron rod found for corner;

Thence South 49 degrees 05 minutes 44 seconds West along the Northwest line of said Shadydell Drive, a distance of 412.80 feet to a 1/2 inch iron rod with a yellow cap stamped "TXHS" set for corner, said point being in a curve to the left having a radius of 425.00 feet, a delta of 31 degrees 12 minutes 25 seconds, a chord bearing South 63 degrees 52 minutes 40 seconds West a distance of 228.63 feet;

Thence in a Southwestern direction along the Northwest line of said Shadydell Drive and curve to the left an arc distance of 231.48 feet to the Point of Beginning and containing a total of 1,238,758 square feet or 284380 acres of land.

TRACT 3:

Being a tract of land situated in the S.A. Hatcher Survey, Abstract No. 1792, in the City of Fort Worth, Tarrant County, Taxes, being all of Lot 1, Block 2 of MAFRINE CREEK APARTMENTS, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Cabinet A, Slide



Unofficial Copy

8820, Deed Records, Tarrant County, Texas, and being that same tract of land conveyed to Marina Creek Land Partners, L.P. by Dead recorded in Instrument No. D212240140. Official Public Records, Tarrant County, Texas and being more particularly described by metes and bounds as follows:

Beginning at an "X" found for corner in the intersection of thee North line of Shadydell Drive (a 60' right-of-way) and the East line of Huffines Boulevard (an 84' right-of-way}, said point being in a curve to the left having a radius of 1992.00 feet, a delta of 05 degrees 38 minutes 38 seconds and a chord bearing North 24 degrees 51 minutes 49 seconds West, a distance of 196.14 feet;

Thence in a Northwestern direction along the East line of said Huffines Boulevard and curve to the left, an arc distance of 196.22 feet to an "X" found for corner;

Thence North 27 degrees 41 minutes 29 seconds West continuing along the East line of said Huffines Boulevard, a , distance of 358.66 feet to an "X' found for corner in the intersection of the East line of said Huffines Boulevard and the South line of Shadydell Drive(a 60' right-of-way);

Thence North 62 degrees 18 minutes 52 seconds East along the South line of said Shadydell Drive, a distance of 50.00 feet to a 1/2-inch iron rod with a yellow cap stamped "TXHS" set for corner, said point being in a curve to the right having a radius of 430.00 feet a delta of 39 degrees 05 minutes 49 seconds and a chord bearing North 81 degrees 51 minutes 48 seconds East, a distance of 287.76 feet;

Thence in an Easterly direction along the South line of said Shadydell Drive and curve to the right, an arc distance of 293.42 feet to a 5/8-inch iron rod found for corner, said point being in a compound curve to the right having a radius of 485.00 feet, a delta of 30 degrees 28 minutes 27 seconds and a chord bearing North 85 degrees 43 minutes 27 seconds East, a distance of 254.93 feet;

Thence continuing in an Easterly direction along the South line of said Shadydell Drive and curve to the right, an arc distance of 257.96 feet to a 5/8 inch iron rod found for corner in the intersection of the South line of said Shadydell Drive and the West line of Shadydell Circle (a variable width right-of-way), said point being in a curve to the right having a radius of 425.00 feet, a delta of 89 degrees 03 minutes 04 seconds, a chord bearing South degrees 04 minutes 09 seconds West, a distance of 596.04 feet;

Thence in a Southwesterly direction along the Western line of said Shadydell Circle, an arc distance of 660.55 feet to a 5/8-inch iron rod found for corner;

Thence South 68 degrees 47 minutes 56 seconds West continuing along the North line of said Shadydell Circle, a distance of 96.50 feet to the Point of Beginning and containing 232,838 square feet or 53452 acres of land.

TRACT 4:

Being a tract of land situated in the S.A. Hatcher Survey, Abstract No. 1792, in the City of Fort Worth, Tarrant county, Texas, being all of Lot 1, Block 1 of MARINE CREEK APARTMENTS, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Cabinet A, Slide 3820, Deed Records, Tarrant, County, Texas, and being that same tract of land conveyed to Marine Creek Land Partners, L.P. by Deed recorded in instrument No. D212240140. Official Public Records, Tarrant County, Texas, and being more particularly described by metes and bounds as follow:

Unofficial Copy

Beginning at an X set for corner in the East line of Huffines Boulevard (an 84-feet right-of-way), said point being the North West corner of a tract of land conveyed to H&M Mackey, LLC by Deed recorded in volume 15932, Page 274, Deed Records, Tarrant County, Texas, and also being in a curve to the left having a radius of 1992.00 feet, a delta of 08 degrees 12 minutes 02 seconds and a chord bearing North 16 degrees 12 minutes 56 seconds West, a distance of 284.87 feet;

Thence, a Northerly direction along an East line of said Huffines Boulevard and curve to the left an arc distance of 285.11 feet to an "X" found for the corner in the intersection of East line of said Huffines Boulevard and the South line of the Shadydell circle, (a variable width right-of-way);

Thence North 68 degrees 47 minutes 53 seconds East along the South line of said Shadydell Circle, a distance of 96.63 feet to a 5/8 inch rod found for corner, said point being in a curve to the right having a radius of 485.00 feet, a delta of 73 degrees 41 minutes 32 seconds and a chord bearing North 31 degrees 50 minutes 59 seconds East, a distance of 581.68 feet;

Thence in a Northeasterly direction along the Southeast line of Shadydell Circle, and curve to the right, an arc distance of 623.79 feet, to a ½ inch iron rod with a yellow cap stamped "TXHS" set for corner;

Thence North 85 degrees 35 minutes 55 seconds East, a distance of 2.75 feet to a ½ inch iron rod with a yellow cap stamped "TXHS" set for corner in the West line of a tract of land conveyed to the City of Fort Worth by Deed recorded in volume 7226, Page 721, Deed Records, Tarrant County, Texas;

Thence traversing along the exterior line of said City of Fort Worth tract as follows:

South 71 degrees 17 minutes 20 seconds East, a distance of 252.71 feet to a ½ inch iron rod with a yellow cap stamped "TXHS" set for corner;

South 53 degrees 55 minutes 24 seconds East, a distance of 230.95 feet to ½ inch iron rod with a yellow cap stamped "TXHS" set for corner;

South 33 degrees 45 minutes 40 seconds East, a distance of 121.55 feet to a rail rod spike found for corner, said point being the North corner of Lot 1, Block 1 of Crosspoint Church Addition, and Addition to the City of Fort Worth, according to map recorded in Instrument No D214143867, Deed Records, Tarrant County, Texas;

Thence South 59 degrees 13 minutes 24 seconds West along the North line of said Lot 1, Block 1 and passing through the common Northwest corner of said Lot 1, Block 1 and the Northeast corner of aforementioned H&M Mackey, LLC a total distance of 947.19 feet to the point of Beginning and containing 292,114 square feet or 6.7060 acres of land.

Unofficial Copy

TARRANT COUNTY, TEXAS

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS OF
TARRANT COUNTY, TEXAS
07/31/2024 04:59 PM

D224135502
LIS PENDENS
Pages: 5
Fees: $36.00

MARY LOUISE NICHOLSON
COUNTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | |
| | § | |
| ***Defendants.*** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LC,** | § | |
| | § | |
| ***Relief Defendants.*** | § | |

**ORDER GRANTING DLP ENTITIES' EMERGENCY MOTION
TO DECLARE LIS PENDENS VOID**

Before this Court is the DLP Entities' Emergency Motion to Declare Lis Pendens Void. Having considered the Motion, the Court finds that it should be and hereby is GRANTED.

The Court therefore DECLARES that the Lis Pendens filed by Timothy Barton in the real property records of Tarrant County on July 31, 2024, copies of which are attached to the Motion, on the Orchard Farms Property (Being a tract of land situated in Block 20 and Block 23 of the Shelby County School Land Survey, Abstract No. 1375, City of Fort Worth, Tarrant County, Texas, being a portion of that tract of land as described in deed to Wall 007, LLC, recorded in County Clerk's File No. D217259397, Official Public Records, Tarrant County, Texas and being

more particularly described in the Lis Pendens) and on the Marine Creek Property (Being Lot 1, Block 1; Lot 1, Block 2 and Lots 2 and 3, Block 3 of Marine Creek Apartments, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Cabinet A, Slide 8820, Deed Records, Tarrant County and being more particularly described in the Lis Pendens) are VOID.

SO ORDERED, this ____ day of September 2025.

____________________________________
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE